Case number 2012-4191 Lucas Burgess and Angela Burgess v. Gene Fischer Board of County Commissioners of Greene County, Ohio. At an all-or-nothing rate of 50 per side. Mr. Schultz. Good morning, guys. I'd like to reserve five minutes for rebuttal. Fine. Your Honors, this appeal is really about the standards that the district court applied in deciding the defendant's motion for summary judgment. Specifically, the two separate standards that the district court applied to Mr. Burgess' two Section 1983 claims. The first, for use of excessive force, the district court held that because this court had not yet clarified whether the Fourth Amendment or the Fourteenth Amendment applied to an arrestee who is in the process of being booked into a jail, that the Fourteenth Amendment standard of malicious force should apply to Mr. Burgess' claims. This court has held, specifically discussing which amendment applies, that it simply doesn't matter. That regardless whether the Fourth or the Fourteenth Amendment governs a plaintiff's excessive force claims, the legal norms underlying those claims were nevertheless clearly established. That was a statement this court made in 2009 in Harris v. City of Syracleville, regarding a gentleman with very similar facts, who was also arrested for a DUI, who was also injured during the booking process in 2004. Regardless, which standard was applied to Mr. Burgess' claims, there were facts that would have allowed a jury to find either that the defendants used excessive force, or that they used malicious force. Mr. Burgess' testimony established that while he was being searched, he made a rude comment to the correction officer who was searching him. As a side note, the district court incorrectly identified the gender of that officer. The district court mentioned it four times, so apparently it seemed important to him. It shouldn't make any difference. Immediately after Mr. Burgess made the rude comment, he was taken to the ground. His head struck the floor so hard that it cracked his orbital socket in two places, and it cracked his maxilla in two places. It also knocked one of his molars out of his mouth. Mr. Burgess doesn't remember anything from this time until several hours later when he woke up in a jail cell. According to the defendant's testimony, Mr. Burgess was conscious and was talking, and removed his own earrings and walked into the jail cell and spoke to the nurse. Mr. Burgess doesn't remember any of this. These facts are sufficient, either under the 4th or the 14th Amendment, to create a genuine issue of material fact as to whether Mr. Burgess' constitutional rights were violated. That's the first element to defeat qualified immunity. The second element was whether or not the constitutional right was clearly defined. This court held in the Harris case that the constitutional right was clearly defined. Whether under the 4th or the 14th Amendment, it doesn't matter. I'm a little bit confused because looking at your brief, I didn't see you citing the Harris case, and now that is the main case that you're relying on? It's actually discussed in great detail in our reply brief, Your Honor. In your reply brief. It was actually raised by the appellees in their brief. Upon reading the case, I realized exactly how close it is to this case. Again, you have a plaintiff who was arrested for a DUI. Was mouthing off while he was being searched. Was injured. In Mr. Harris' case, it was a spine injury, not a skull injury. Was denied medical care for several hours, and has been suffering the repercussions of it ever since. In that case, this court specifically declined to decide whether the 4th or the 14th Amendment applied. It said it doesn't matter. Under these facts, Mr. Harris would qualify under either. The same evidence that establishes that the defendants aren't entitled to qualified immunity establishes the elements of Mr. Burgess' 1983 claim that he had a constitutional right, that it was violated, that he was injured thereby. As I understand the briefing, the Aldini case was a critical case, and I'm interested that you're not relying on that. The Aldini case was the case that this court actually stated that someone who was being booked into a jail is protected by the 4th Amendment. And doesn't that inherently help your position? Because isn't the 4th Amendment standard easier for a plaintiff to meet? It is, Your Honor. The Aldini case came out shortly after Mr. Burgess was arrested. There's a question whether or not the officers would be, a reasonable officer in their position, would be expected to know that. Although this court has held that it does not matter. But the Aldini case was involving actions that occurred before the actions involving your client and held for the 1983 plaintiff, right? That's correct, Your Honor. I believe that's the argument we made in our main brief. So that would seemingly, A, establish the law that the 4th Amendment applies, and B, establish the law for events as of the date of the events in the Aldini case. It would also establish that the district court applied the wrong standard, Your Honor, which is reversible error in and of itself. And Aldini is after Harris v. City of Circleville, right? Yes, Your Honor. It's a 2010 case. Which is why the district court said that this issue was not settled at the time of Mr. Burgess' arrest in 2009, January of 2009. The Harris case came out in, I believe, May of, not May, March of 2009, so it was a couple months later. The Aldini case was about a year and a half after Mr. Burgess was arrested. So the Harris case was after the events in question also. The decision was, Your Honor, this court's decision was, the Southern District of Ohio's decision was not. It was before Mr. Burgess' arrest. It was decided by the same court. Of course, the Southern District isn't bound by its own decisions, but it should have been informative to the district court in this case. Regardless, as you said, this court has held that, in Aldini, that at the time of Mr. Burgess' arrest, the Fourth Amendment applied. Which is really, it is decisive to this assignment of error. The other 1983 claim suffers from a similar problem. The district court applied, again, the wrong legal standard. It's a claim for deliberate indifference to a serious medical need. The standard that the district court applied was that a deliberate indifference claim, based on a delay of medical care, which is our claim, the sort of claim that we have here, a constitutional violation arises only if, and the word only was inserted into that quote by the defendants in their briefs, if the injury in question is so obvious that even a layperson would easily recognize the necessity for a doctor's attention and the resulting need for treatment was not addressed within a reasonable time frame. And that's a quote from Scazzari v. Miedzianowski, which is a 2012 case. It's quoting Blackmore v. Kalamazoo County. In this case, the district court specifically held that Mr. Burgess was not diagnosed at the prison. He was diagnosed afterwards. And because of that, the district court held that the objective elements of his deliberate indifference claim can't be satisfied by a medical evaluation. The district court set up a standard where a defendant can claim, I didn't notice, I'm not that good at my job, and avoid liability. The defendant in this case, Nurse Jordan, is a certified nurse practitioner. Under Ohio law, she is as close to a medical doctor as you can get. She is trained to diagnose all sorts of different problems, including broken bones. In this case, she never actually did an examination of Mr. Burgess. She knew that he had lost a tooth. He handed it to her. She noticed that he was bleeding from his face and his head, but she never actually examined his face to see if there were any broken bones. Why isn't that just negligence as opposed to deliberate indifference? It's the level. You're familiar with the levels of intent you're on. The difference between negligence and deliberate indifference is essentially a touch more than the difference between negligence and recklessness. Our expert witness, Dr. Parris, testified that any medical professional, seeing these injuries that she could see from the other side of the jail cell door, would have known that an actual examination would be necessary to determine, one, if Mr. Burgess had any injuries to his eyes. He said that that specific injury to his orbital socket could have resulted in muscles being trapped in the bone, and Mr. Burgess could have lost the eye. That didn't happen. Mr. Burgess was lucky. The fact that this defendant went through years of medical training, earned a master's degree so that she could get to this level, was specifically licensed by the state to provide medical care, and hired by the state to provide medical care to people in Mr. Burgess's position, and then refused to do so, isn't just negligence. It's a refusal to do her job. That's beyond the bounds of recklessness. The reason she was there in the jail was to provide medical care to people like Mr. Burgess, and she refused to do it. Did you show that there was any extra harm to your client as a result of the delay? Approximately 14 hours of sitting there with four cracks on his skull with nothing but ibuprofen to keep the pain away, Your Honor. So it's the pain that's the harm? That's the main element, Your Honor. We can't show that Mr. Burgess would have had surgery any earlier than he would have. Mr. Burgess didn't have health insurance at the time. He had to wait to get approved by the Department of Job and Family Services to get the surgery done. But there was surgery required to fixate the bones in his eye socket. When your client got to the hospital, were the hospital physicians or health care people able to detect these broken bones from physical inspection of his face, or did they have to have x-rays and other aids to do that? My understanding is that the doctor who treated him, after looking at Mr. Burgess' injury, suspected cracks to his orbital socket and his jaw, and then did an x-ray to confirm it. So he couldn't diagnose the fractures without the aid of the x-ray? I don't know if that was possible, Your Honor. It's my understanding there were actually displaced fractures, so it's possible that if the doctor was feeling along Mr. Burgess' jaw, he would have felt the dip, but I don't know. There's no evidence on it, Your Honor. And I'm out of time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Kevin Lance on behalf of the defendants. Responding to counsel's argument, the district court properly granted summary judgment in my client's favor. She argued below on our motion for summary judgment that the Fourth Amendment should apply. And we did that because the facts and records show that my client's conduct satisfies the objective and reasonableness standard of the Fourth Amendment. Now, the district court determined to apply the 14th Amendment in part because the Aldini decision had not been issued at the time that these events of January 23rd into the 24th, 2009, occurred. It has been stated here that certainly there are two different standards. The 14th Amendment is a shock-to-conscious standard which requires sadistic or malicious behavior that actually is punishment rather than a good-faith effort to maintain discipline. But at page 11 of the district court's decision, the court held the officer's actions were reasonable, saying it was not clearly established that police officers are not entitled to use reasonable force on a handcuffed detainee during the booking process in order to maintain discipline. Arguably, the reasonableness standard implicates the Fourth Amendment. But our argument from below stands that the officer's conduct here satisfies either standard. But that's only if you take the facts according to the officers. I mean, the plaintiff gives a completely different version of the facts. The plaintiff does, Your Honor, to a certain point. He disagrees with the level of noncompliance during the booking process. Although he does testify he was out of line, he did testify he made the vulgar comment that's been cited by the district court and in the briefing here. But after he made that comment, he says he was rendered unconscious and he can't testify as to what happened for several hours when he supposedly woke up in the holding cell and was treated several times by Nurse Jordan, who actually had gone off work something like 75 minutes earlier. Those gaps in what the plaintiff cannot testify to, I believe that the court should accept our version of what happened after that comment was made, which includes, I believe, at least one other warning to Mr. Burgess that if he didn't comply with the attempts to conduct the search, he would be taken to the floor. He continued not to comply. He was taken to the floor. But that happened while he was still conscious, and he says he was taken to the floor and became unconscious. Respectfully, that's correct, Your Honor. I guess what I was getting at is our version of events say there was more that happened after he claims he made that comment and was immediately rendered unconscious. But taking his version, after he's rendered unconscious, Nurse Jordan, after he has helped up, after less than 10 seconds on the floor, Nurse Jordan does an assessment. She sees a small cut above his left eye, a little bit of swelling, and some bruising. I think it's important to note that the plaintiff has offered no causal evidence whatsoever that the defendant officer's actions caused the internal fractures in the orbital area. After Nurse Jordan does her assessment, Mr. Burgess is taken upstairs to another booking area where he is able to remove some jewelry, which is photographed. He still testifies he was unconscious during that time. And he's placed in a holding cell. But because of his intoxication and his belligerence, it's impossible to complete the booking process immediately. In fact, the narrative from one of the deputies states he had to show a taser to get out of the room, and Mr. Burgess let him out of the room. Then it's also important to note that around 3 a.m., when the booking process is being completed, Mr. Burgess fills out a medical form. And on that form, among other things, he states he's making truthful statements, he has no emergent condition, he does not need medical care, and he's advised that whenever he needs medical care, 24 hours a day, to notify a deputy. He signs that form. Was this during the period that he says, I guess in an affidavit, that he was unconscious? That's not clear from the record, Your Honor, whether it was during that period or after. Because it seems to me that we're getting into highly detailed fact questions, which if we accept his theory, which is that he was unconscious for a period of time, we would have to decide in his favor. In other words, his theory is that he made the offensive, vulgar comment and immediately was taken down so forcefully that he became unconscious for a period of several hours. And then when he comes to, he has serious pain and a tooth that's fallen out. Your Honor, all I can say is during his deposition, he admitted that his signature appears on that medical form. Right, but speaking hypothetically, you can be essentially not very sentient about what's happening to you and go through emotions. In other words, somebody's telling you to sign it and you just sort of sign it. Under his theory, he's been forcefully beaten, essentially, by being thrown so that he ends up with this cracked skull that requires surgery. So if we have to take all the facts in the light most favorable to him, I don't think it's wholly impossible that he signed these things or that he took out his earring while he was essentially not in a conscious state. Your Honor, I would just say that he had every opportunity during his deposition to state that it was not his signature or that he didn't remember signing that form. He did not do so. And the other comment I would have, and I admit that we don't have case authority for this, but it's my experience on summary judgment that where a non-movement has gaps in the narrative of what occurred and the defense can fill in those gaps, that that factual remission by the defense is accorded, certainly not weight because we don't do that on summary judgment, but certainly is accorded some portion of the narrative. Do you have cases that suggest that would be the case if the plaintiff here is claiming that he was unconscious during the period? No, Your Honor. I want to talk a moment, too, about the standard for deliberate indifference to serious medical need. As counsel stated, Mr. Burgess was not diagnosed at the jail, and respectfully, there is no evidence in the record that Nurse Jordan as an LPN could make a medical diagnosis, and she did not. So she was an LPN, not a nurse practitioner? Correct. The deliberate indifference to serious medical need certainly has two portions, as we're aware, an objective and subjective element. Objective portion can be met in a couple of different ways. One is with a medical diagnosis. That did not occur in this case until post-release. The other way is for an obvious injury the layperson would recognize as obvious. The court did not eliminate the medical diagnosis portion. It just wasn't applicable to these facts. Now, the fact, as Judge Clay pointed out in his questioning, that Mr. Burgess's condition was not apparent until after an X-ray certainly adds weight to our argument that these injuries did not inform Nurse Jordan of a serious medical need that was deserving of immediate medical attention. The record indicates, taking the facts in favor of the plaintiff, that he rang the buzzer several times, and for her second evaluation of Mr. Burgess, Nurse Jordan went to his holding cell, again evaluated him. He said his jaw was hurting. He told her that tooth was knocked out by state troopers during the original arrest. She administered ibuprofen, and there's no indication that there was any other encounter between Nurse Jordan and Mr. Burgess prior to his release. Now, again, I go back to the medical form where he indicated he had no emergent medical condition and signed the form. So Nurse Jordan had no subjective knowledge of Arrest of Health, but even if she possibly could have done more based on the swell cut, the swelling, and the bruising, as was pointed out earlier, this is just negligence. The plaintiff has the burden to show for the subjective portion of this tort that the officer subjectively knew of Arrest of the Inmate's Health, drew that inference that a substantial risk of harm existed, and then consciously disregarded that risk. The evidence in this case does not rise to that level. If Nurse Jordan made a mistake, it was negligence. It was not certainly of the magnitude contemplated by this constitutional tort. Other items, Your Honor, on failure to intervene, certainly an officer needs to know that excessive force was being used or was going to be used and had the time to intervene but did not. As the District Court found, the force that was used was not excessive, there's been nothing offered by the plaintiff that any other of the defendants had time or knew that excessive force was going to be used, and I asked the court to look at the Thacker case that we cited in the brief in terms of both excessive force and failure to intervene. In Thacker, you had a very belligerent arrestee who fought with the officers who were arresting him and then was eventually handcuffed. Shortly thereafter, they're trying to place him in the rear of the cruiser and he mentions to the officer, this door is blocked by an obstacle, I believe it was a tree, there's not enough room for me to get in, and the officer shoves him into the rear of the cruiser and he sustains a severe laceration to his forearm in the process. And this court held in that case that was not excessive force, they indicated that there may have been a level of frustration because of the prior encounter, but the force was not excessive. Also in this case, the plaintiff admittedly was out, he didn't say out of control, he said out of line, and he admitted using profane and vulgar language. But the profane language would not be a basis for using excessive force or indeed using any force, would it? The fact that you have an arrestee who's swearing at the police shouldn't give the police license to beat the arrestee up, right? Under the Fourth Amendment, profane language alone, I agree, Your Honor. But in Thacker, the incident had ended. The subject was handcuffed, the combativeness was gone, there was no further vulgar language between the arrestee and the officer, nevertheless the officer pushes Thacker into the cruiser and there's no excessive force. Thacker, I see from your brief, is in federal appendix, so it's an unpublished case. I think that's correct. Also the plaintiffs have raised constitutional torts for failure to train or supervise, and really I believe their focus here is what they believe is an adequate investigation. And the record shows that Major Prendell did conduct an investigation. He read the reports, he talked with the officers, he determined that there was no violation of policy. When was Prendell's investigation occurring? Was it immediately after the event or when? My recollection, Your Honor, is that it was concluded within five to ten days. So that was when there still were the videotapes of the incident? At least for the first five, Your Honor. For the first five days? Yes. So is there evidence that Prendell did or didn't look at the videotapes? The record's not clear on that issue. But the fact that Prendell did an investigation might lead a reasonable police force or sheriff's force or whoever it is to preserve the tapes as opposed to destroying them pursuant to their records policy. Your Honor, I believe that might be the case if there's some knowledge or some suspicion that litigation was going to result. But obviously Prendell had some suspicion that something was afoot if he bothered to investigate. Your Honor, according to policy, any use of force requires an investigation, at least to the extent of a narrative report. Shouldn't the policy be then that there should be preservation of the videos if there was a use of force that was investigated or should be investigated by the powers that be there? The record's troubling to have a policy that videotapes are going to be destroyed in five days when there was an argument that there was excessive force here. All I can say is that the public records retention policy was not only approved by Greene County, it went through the approval process of the Historical Society and the Auditor's Office. If there had been some reservation about the length of time the videos were to be kept, I think it would have been stated during that review process. Your question is a good one, Your Honor. It's just that in this case, it was five days. It didn't depend on whether there was a use of force or not. Certainly in the case we cited in our brief, which is out of the Northern District of Ohio, I believe it is Luke v. City of Cleveland, which is an August 22, 2005 case, didn't involve excessive force, but it did involve, I believe, some employment issues. That situation is not inapposite because once it was filed on the same set of facts, the records were preserved for that suit. Then that suit went away and the records were destroyed before the statute of limitations expired for the same set of facts. A second case on the same set of facts was filed. The records were gone and the court said because the record retention policy permitted disposition of those records during that time that there was no issue of spoliation. I see my time is up. I appreciate your time this morning. Thank you. Thank you. Your Honors, I have to apologize. I gave you bad information. I got Nurse Jordan confused with the defendant in a separate case. I apologize. Mr. Lentz brought up an issue as to the District Court's decision that the force used against Mr. Burgess was reasonable. There's a legitimate issue of fact here, Your Honor. The excuse used by the defendants for actually using any force at all on Mr. Burgess was that he refused to keep his forehead on the search mat and that for that reason they were supposedly having trouble searching him. He kept turning his head because he wanted to see what was going on, is what he testified. There is a legitimate question whether that is an excuse for performing a takedown on a handcuffed individual who is being held and searched by two officers with another officer standing within a few feet of him and a nurse standing within a few feet away from there and a state trooper in the same room. That set of facts, which is based partially on Mr. Burgess' testimony, partially on the testimony of the defendants, partially on the testimony of the Ohio trooper who arrested Mr. Burgess, creates a genuine issue of material fact as to whether any force was justified in being used. Second, there's the question of whether it was reasonable to use enough force to actually make Mr. Burgess' head hit the floor at all, much less so hard that it broke bones. Does the record show what kind of a floor it was? I don't believe it does, Your Honor. I was under the understanding that it's concrete, but I can't cite you to anything that would show that. With regard to the medical form that the defendants say Mr. Burgess signed, he doesn't remember signing it. He did testify at his deposition that that is his signature. But that presents a question for the jury as to what weight to give the form and how conscious Mr. Burgess was when he signed it. Then there's the issue that the defendants have continually raised as to whether Mr. Burgess' injuries were caused during his arrest by Trooper Griffith or during his booking. Trooper Griffith and Mr. Burgess both testified that Mr. Burgess was not injured when he was brought to the Green County Jail. Trooper Griffith was originally a defendant in this case. We dismissed him out once it was demonstrated that there was no viable claim against him. Trooper Griffith did not cause Mr. Burgess' injuries. He testified to that. Mr. Burgess testified to that. As to the statement that Mr. Burgess supposedly made to Nurse Jordan that his tooth was knocked out by a trooper, Mr. Burgess testified at his deposition that he was confused when he made that statement and he didn't know who the people were who were searching him. He was arrested by a trooper, so we assumed that he was still surrounded by troopers. As you pointed out, Your Honor, there is a legitimate question whether Lieutenant Prindle ever reviewed the videotape. There is a legitimate question whether a public records policy that allows a videotape to be destroyed within five days is in and of itself a constitutional policy or not. Are there any cases on that topic? Not specifically on videotapes, I don't believe, Your Honor. We did cite to one in our main brief. To be honest, it's kind of a side issue. It's rather dependent on whether or not our 1983 claim for excessive force survives. As are most of the other claims that I haven't discussed with you yet. Certainly, Mrs. Burgess' claim for Wesson Consortium is. The claim for failure to intervene is entirely dependent on the excessive force claim and that's why, to the extent that the... Well, the opioid theory is that your client was flung to the floor  so how could there be a failure to intervene claim for the people who weren't flinging him to the floor? There was at least one other officer and I don't have his name. They were there but... Within reach, Your Honor. He testified he was only a few feet away. So your theory is that person could have run in and... At least kept his head from hitting the floor. Nurse Jordan testified she was in the room. She put no affidavit that she was in the room. We didn't actually take her deposition. There's a question of how far away she was, whether she would have been able to rush in and keep his head from hitting the floor. I believe she was on the side that he went toward. The pictures demonstrate that she was. And as I said, Your Honor, those are dependent claims. The real question in this case is whether the district court applied the correct legal standard to the excessive force claim and to the deliberate indifference to a serious medical need claim. The rest of the case revolves around those two issues. And thank you very much for your time. Thank you both. Thank you for your argument. The case will be submitted to the court. Call the next case, please.